! SNYDER *against* KUNKLEMAN, *et als.*

The taking of a note by a landlord from a tenant, for the amount of rent due, does not take away the right of distress. So a lessor, who has recovered a judgment in an action upon a covenant to pay rent, may, notwithstanding, distrain for the same rent in arrear.

Whenever one execution creditor chooses to interfere with the action of another execution creditor's writ, he does so at his peril.

All executions issued or kept on foot, with intent to delay, hinder and defraud creditors, are avoided by the Statute 13 *Elizabeth.* If, therefore, one execution creditor, by management or arrangement, hinders the sale of personal property levied, and upon which other executions are also levied, he thereby postpones his right to the money made from the sale of such property, and the subsequent execution creditor thus delayed shall be prefered.

ERROR to *Union* County.

This was an issue directed by the Court of Common Pleas, in which *Henry W. Snyder* was plaintiff, and *Daniel Kunkleman,* *John Kunkleman,* *John Snyder,* *Christian Baldy,* and *Christian Houtz,* were defendants, to try whether the plaintiff was entitled to the money raised from the sale of the personal property of

(Snyder *v*. Kunkleman.)

*Daniel Kunkleman;* and which of the above named defendants are entitled to the residue, if any.

The facts were in substance these; *Daniel Kunkleman* was the tenant of *Henry W. Snyder*. *Kunkleman* was indebted to *Snyder* for rent and grain sold to him, in a large sum of money; for which he gave his note, dated the 30th April, 1829, payable 1st May. Judgment was signed the 4th of May, 1829. The 2nd May, 1829, *Kunkleman* applied to Mr. *Sterrett*, for his professional services, complained of the conduct of *Snyder*, and said that he had other creditors, whom he liked better, and wished to know how he could fix it, that they would be paid. He was advised to give judgments, which his counsel thought were preferable to an assignment. This course, after some consultation, was adopted. Mr. *Sterrett* then ascertained the sum due each of the creditors, in some cases, from papers in the possession of the defendant; and in others from his recollection. He took the judgment notes to the office, had them entered, issued executions, and forthwith, had them placed in the hands of the sheriff. It is the impression of Mr. *Sterrett*, that he urged the Sheriff to proceed without delay. The creditors were not present when the arrangement was made, but were much pleased when afterwards told of it, at the next court. They gave him no directions about the sale; but some of them were anxious to have their money soon. Mr. *Sterrett* believed that at the May court, they asked, if the grain should be sold immediately: they thought the grain would sell better about harvest. Mr. *Sterrett* said, they would not be injured by a short delay: that it was sufficient, if the sheriff had the money at the September Term. After the executions were in the hands of the sheriff, *Snyder* also issued an execution, which came to his hands, the 7th May, 1829, and on which he was required to proceed. The sheriff, who was examined as a witness, says, that he received the first four executions from Mr. *Sterrett*, on the 2nd May, 1829. That he ordered him to make a levy, which he did, on the 5th May, on four horses, with geers, eight acres of wheat in the ground, on *H. Snyder's* land, a four horse wagon and bed, two distillery kettles, and all the apparatus, one stove with pipes, one corner cup-board, and six chairs, one looking glass, two saddles, and one large iron kettle. After the levy was made, he told the defendant that if he would give him a bond, with sufficient security, he would let the property be a while. He thought, as he said, the plaintiffs would bail him. And accordingly, the creditors, viz. *John Kunkleman, John Snyder,* and *Christian Houtz,* entered in to a bond to the sheriff, with *Daniel Kunkleman,* the fifteenth May, conditioned to deliver the property on demand. After he was thus secured, the sheriff thought he need not sell, as he was himself safe, having the plaintiffs for bail, although repeatedly urg-

ed by *Snyder* to sell. The Sheriff received *Snyder's fi. fa.* the
the 7th May, on which he made a levy, subject to prior executions,
*Snyder* wished to have the property sold immediately. The
sheriff said the other creditors had given him a bond, and that he
thought the grain would sell better towards harvest. *Snyder* ap-
peared dissatisfied, and wished an immediate sale. The sheriff
told him he was secured, and that he did not care much what he
said, the other creditors did not wish him to sell. This was be-
fore the May Court.

At the May Term, the 18th of May, *Snyder* having obtained a
rule to shew cause why the judgments should not be opened, the
parties made the following agreement:

"Judgments and executions to remain as they are, and the amount
not to be contested either by *John Kunkleman*, *Christian Houtz*,
*Christian Baldy*, *John Snyder*, or *H. W. Snyder*. *Daniel Kunkle
man* to have the right of contesting *H. W. Snyder's* judgment, and
shewing that it was given for more than was due if he sees prop-
er. Defendant's property to be sold forthwith, and the money
brought into Court, where each plaintiff may claim the money,
and the respective rights of each shall be determined by due course
of law, under the direction of the court. May 25, 1829."

After the agreement, *Snyder* repeatedly called on the sheriff to
proceed; but without success. He wrote to him to the same effect,
and referred to the agreement, which required an immediate sale.
The sheriff then wrote to the other creditors, who told him not to
proceed immediately. The sheriff said the grain would bring a
better price about harvest; but that he would do as they pleased,
either sell or stay the proceedings, as they desired. He said he
would have sold, if they had told him to do so. He thought, they
told him they would let him know when they wanted the property
sold. When he told them that *Snyder* was urging him, they re-
plied, he had no right to the property; that they had secured him
and would keep him clear. The property was sold the 3d July,
1829, for five hundred and forty-four dollars and thirty-cents,
which was brought into court for distribution. *Snyder* issued a
*ca. sa.* against *Kunkleman*, who, on the 19th December, 1829,
was discharged.

The jury under the direction of the Court found a verdict for the
defendants; and the plaintiff having excepted to the opinion of the
Court, now assigned the same for error.

*Bellas* and *Lashells* contended, that the conduct of the defendants
was a legal fraud, such as will postpone their right to the proceeds
of the sale; and cited 1 *Rawle* 366. 8 *Serg. & Rawle*, 444. 11
*Johns. Rep.* 110. 3 *Wash. C. C. R.* 60. 17 *Johns. Rep.* 274.
8 *Johns. Rep.* 20. 1 *Salk.* 320. 12 *Serg. & Rawle*, 41. 13

(Snyder *v.* Kunkleman.)

*Serg. & Rawle,* 345.   8 *Serg. & Rawle,* 510.   14 *Serg. & Rawle,* 214.   17 *Serg. & Rawle,* 251.   1 *Penn. Rep.* 57.   2 *Rawle,* 282. *Greenough,* contra.

Contended, that whether there was fraud or not, was a matter of fact; and was properly submitted to the jury and passed upon by them in favour of the defendants.

The opinion of the Court was delivered by

Rodgers, J.—In a manuscript case, in the Common Pleas of *Philadelphia,* it was decided, that notwithstanding a landlord has obtained judgment before a justice, for a sum less than twenty dollars, and special bail has been entered for a stay of execution, he may legally distrain upon the tenant for the same rent for which judgment was entered.   So a recovery on a covenant for the payment of rent, is not, without actual satisfaction, an extinguishment of the rent; and the lessor may, notwithstanding such recovery, distrain for the rent in arrear.   *Chipman* v. *Martin,* 13 *John. Rep.* 240.   The judgment can only be considered as additional security, and not as a satisfaction for the rent; nor does it alter the case, that the plaintiff has issued a *fi. fa.* or a *ca. sa.;* still the landlord has not received satisfaction.

The rent, notwithstanding, remains due, and in arrear.   And in *Banthan* v. *Smith,* 2 *Bin.* 153, it is ruled, that a judgment without satisfaction works no extinguishment of the rent.   The landlord has concurrent remedies which he has a right to pursue, until he obtains actual satisfaction for the rent in arrear.   The note which *Kunkleman* gave was partly for rent, and partly for grain; and it behooves *Snyder* to shew, on the trial, what part was for rent, and what for grain sold to *Kunkleman.*   For the amount of rent due, he has a right to satisfaction to the extent of the money raised by the sale of the grain.   The grain was on the demised premises, and as such, was subject to distress; for although the lien had expired, yet, inasmuch as it had not been removed from the premises, it is liable for the rent.   The right to distrain is secured by the fourteenth section of the act of the 21st March, 1772.

The statute of 13 *Elizabeth,* avoids all executions issued or kept on foot with intent to delay, hinder, and defraud creditors.   It is difficult to doubt, that here there was management between certain creditors and the sheriff, to favour *Kunkleman,* at the expense of *Snyder.*   The conduct of the defendant and the other parties to this transaction cannot be explained on any other supposition.   The judgments are entered, and executions issued, in the absence of the creditors, with an avowed intention of defeating an execution which *Snyder* was about to issue.   Immediately after, we find the plaintiffs in the executions, (as the sheriff supposed they would,) giving bond to the sheriff for the delivery of the goods on demand,

(Snyder *v.* Kunkleman.)

with the manifest intent, that the defendant should retain the possession of the goods; and this, notwithstanding the urgent requests of *Snyder* to the sheriff, that he would proceed to sell. The parties afterwards agree that the sheriff shall proceed forthwith and sell. Notwithstanding this, the sheriff, at the instance at least of some of the creditors, refuses to sell, although repeatedly urged by parol and in writing by *Snyder.* He is insultingly told, that they do not care what he said, that he had no right to the property, that the sheriff was safe, and this he seems to have thought a good reason for a shameful violation of duty. The only pretence for this is, that they supposed the grain would sell better about harvest. But this was a shallow pretext, as is evident from the fact, that the grain constituted but a small portion of the property under execution. Whenever one creditor chooses to interfere with the action of another creditor's writ, he does so at his peril. What right have those creditors to interpose between *Snyder* and the sheriff, in fraud of their own agreement. The sheriff says he acted under their direction. If they had ordered him to sell, he would have done so. However improper the conduct of the sheriff, yet the creditors are equally in fault. This presents the case not only of a violation of the statute of *Elizabeth,* but of their own agreement, and with what motive, except to favour *Kunkleman* and delay *Snyder,* it is difficult to imagine.

The testimony leaves it in doubt, whether all the creditors were engaged in the combination against *Snyder.* This is a matter which must be submitted to the jury. We are of the opinion, that such of the creditors, who were consenting to the conduct of the sheriff in delaying the sale, are postponed. We do not put the case on the ground of actual fraud; it is a fraud in law; and so the jury should have been instructed. Their conduct is irreconcileable with good faith. On the whole case, we are of the opinion, these creditors should be postponed.

Judgment reversed and a *venire de novo* awarded.